**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Buchanan Bros Incorporated, | No. CV-23-01879-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| A2Z Xtreme Airgun LLC, et al., | |
| Defendants. | |

Plaintiff Buchanan Bros., Incorporated d/b/a Airguns of Arizona accuses Defendants A2Z Xtreme Airgun LLC and Ben Spencer of unfair competition and willful trademark infringement. At issue is Plaintiff's motion for a temporary restraining order ("TRO") with notice.[1] The motion is granted.

---

[1] Plaintiff's motion is captioned as one seeking a TRO with notice, but it doesn't confirm Defendants received written or oral notice. The Court ordered Plaintiff to file a supplement showing either (1) that it gave Defendants written or oral notice of the motion or (2) explaining why notice shouldn't be required per Federal Rule of Civil Procedure 65(a)(b)(1). In response, Plaintiff filed a supplement stating it "sought a [TRO] with Notice, but requests that the Court enter a [TRO] *without* Notice." But the supplement also states Plaintiff served Defendants with the TRO. A TRO without notice is one entered "without written or oral notice to the adverse party or its attorney[.]" Fed. R. Civ. P. 65(b)(1). Because Plaintiff served Defendants with the motion, Plaintiff isn't seeking a TRO without notice. Plaintiff appears to be conflating notice with an opportunity to be heard. The Court may enter a TRO without hearing from the adverse party, but if the adverse party hasn't received written or oral notice of the motion, additional requirements apply. For example, the moving party must certify in writing any efforts made to give notice and the reasons why notice shouldn't be required, and the TRO's duration can't exceed 14 days, unless the Court finds good cause to extend it for a like period. These additional requirements don't apply here because Plaintiff gave Defendants written notice of the motion by serving them with it.

## I. Background

For over 20 years, Plaintiff has been a wholesale and retail seller of airguns and accessories. Since at least 2011, Plaintiff has sponsored, organized, and promoted airgun shooting competitions in Arizona and other states. One such event is the Extreme Benchrest airgun shooting competition and trade show held each year in October. The U.S. Patent and Trademark Office issued Plaintiff a federal service mark registration for "Extreme Benchrest." Plaintiff has continuously used the mark since October 2011. In October 2013, Plaintiff expanded its Extreme Benchrest event to include a field target shooting competition called Extreme Field Target. Plaintiff registered the domain name "extremefieldtarget.com" in July 2015, and has used the tradename "Extreme Field Target" since 2013.

Prior to 2021, Spencer helped Plaintiff organize the Extreme Field Target competition and competed at both the Extreme Benchrest and the Extreme Field Target competitions. In December 2021, Spencer formed A2Z Xtreme Airgun LLC. In 2022, Spencer created a website called azfft.com and began identifying his business as "Xtreme Field Target." According to Plaintiff, Defendants intend to run competing shooting competitions under the names "Xtreme Benchrest" and "Xtreme Field Target."

In March 2023, Plaintiff sent Defendants a cease-and-desist letter demanding that they stop using confusingly similar marks. The parties negotiated a settlement in principle but failed to memorialize all its terms. Since then, Defendants have been vague about whether they would voluntarily cease the alleged infringement. Accordingly, Plaintiff filed this action and seeks entry of a TRO.

## II. Standard

The purpose of a TRO is to preserve the status quo pending a hearing on a preliminary injunction motion if irreparable harm will occur in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug &*

*Barge Corp./Young Bros., Ltd. Salaried Pension Plan*, 27 F.Supp.2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of immediate relief, the balance of equities tips in its favor, and a TRO serves the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The sliding-scale approach, however, does not relieve the movant of the burden to satisfy all four prongs for the issuance of a TRO. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the [TRO] is in the public interest." *Id.* at 1135.

**III.  Discussion**

Plaintiff has established a likelihood of success on the merits of its trademark infringement and unfair competition claims. To succeed, Plaintiff must show it has a protected ownership interest in the "Extreme Benchrest" and "Extreme Field Target" marks and that Defendants' use of "Xtreme Benchrest" and "Xtreme Field Target" is likely to cause consumer confusion. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). Plaintiff's ownership of the "Extreme Benchrest" mark is presumptively established by its federal service mark registration. *Id.* at 1124. And Plaintiff has shown it likely owns the "Extreme Field Target" mark, notwithstanding the lack of federal registration, given its extensive prior use of the mark. As for likelihood of confusion, the Court finds several of the *Sleekcraft*[2] factors favor a preliminary finding that Plaintiff is likely to succeed. In particular, Plaintiff's marks appear conceptually and commercially strong; other than the stylized spelling of "Xtreme," Defendants' competing marks are identical; they describe similar events; the parties are targeting the

---

[2] *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-54 (9th Cir. 1979).

same group of customers; and Defendants appear to have intentionally adopted these confusingly similar marks knowing that Plaintiff has been hosting Extreme Benchrest and Extreme Field Target competitions for many years. On balance, the Court finds Plaintiff has shown a likelihood of success on its claims.

Plaintiff also has shown a likelihood of irreparable harm in the form of dilution of its marks and damage to its reputation and good will. Plaintiff has worked for decades to establish its reputation, and it customarily hosts the competitions at issue in October. Allowing Defendants to use confusingly similar marks so close to the relevant events likely will cause Plaintiff irreparable harm.

The balance of the equities favors entry of a TRO for at least two reasons. First, Defendants appear to be newcomers to this market. The harm Defendants might suffer from a TRO enjoining the use of these marks likely is less significant than harm Plaintiff will suffer in the absence of temporary relief, given Plaintiff has worked for decades to establish its reputation and cultivate good will and there is no evidence Defendants have established any comparable reputation or good will. Second, on the evidence currently before the Court, it appears Defendants were for a time interested in negotiating a settlement that would involve voluntary cessation of the alleged infringement. This suggests that Defendants would not suffer significant harm by entry of the requested TRO.

Lastly, entry of the TRO serves the public interest in avoiding confusion and deception in the marketplace.

For these reasons,

**IT IS ORDERED** that Plaintiff's motion for entry of a TRO with notice (Doc. 2) is **GRANTED** as follows:

1. Defendants, their respective officers, employees, agents, servants, attorneys, and all those persons in active concert or participation with any of them who receive actual notice of this order are temporarily enjoined from (a) using the "Extreme Benchrest" and "Extreme Field Target" marks, and any other

confusingly similar name or mark (such as "Xtreme Benchrest" and "Xtreme Field Target"), including domain names and trade names, in connection with the promotion, advertisement, or offering of airgun shooting services or airgun competitions, or related goods or services in the United States and (b) falsely representing that they are connected with, sponsored by, endorsed by, associated with, or affiliated with Plaintiff in any manner.

2. Within **7 days** of the date of this order, Plaintiff shall deposit with the Clerk of the Court a cash bond of **$5,000.00** as security for such damages as Defendants might incur if Defendants are later found to have been wrongfully restrained.

3. Plaintiff's motion for a TRO (Doc. 2) is converted into a motion for a preliminary injunction.

4. Plaintiff shall file proof of service of the complaint, the preliminary injunction motion, and this order by no later than **September 19, 2023**.

5. Defendants' response to the preliminary injunction motion is due no later than **September 25, 2023**.

6. Plaintiff's reply is due no later than **October 2, 2023**.

7. The parties shall participate in a preliminary injunction hearing at **10:00 AM on October 10, 2023**, before Judge Douglas L. Rayes. By no later than **October 2, 2023**, the parties shall jointly notify the Court in writing whether live evidence will need to be presented at this hearing, or whether the hearing will be an oral argument on the paper record.

8. This TRO expires on **October 12, 2023** unless otherwise ordered by the Court.

Dated this 15th day of September, 2023.

Douglas L. Rayes
United States District Judge